UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: | |

**Proceedings:** **[IN CHAMBERS] ORDER CONCERNING MOTIONS FOR ATTORNEY FEES AND APPLICATIONS FOR COSTS**

These consolidated cases arise from the fatal shooting of Douglas Zerby by Long Beach Police Department officers in December 2010. Douglas Zerby's mother, Pamela Amici ("Amici"); father, Mark Zerby ("Zerby"); and son, R.S. ("R.S."), through his guardian ad litem Stephanie Sentell (collectively, "Plaintiffs"), sued the City of Long Beach and others (together, "Defendants"), alleging that the shooting violated Douglas Zerby's civil rights. The jury found for Plaintiffs and awarded a total of $6.5 million in damages.

Plaintiffs now bring two motions for attorney fees under 28 U.S.C. Section 1988. Counsel for R.S. and Amici request $952,942.50 ("R.S. & Amici Fee Motion," Dkt. No. 194), and counsel for Zerby request $1,295,670 ("Zerby Fee Motion," Dkt. No. 196), though Defendants calculate the request at $1,325,000 (Bruning Decl. in Support of Opposition to Zerby Fee Motion, Dkt. No. 210, at fn. 1). Plaintiffs also bring applications to tax costs. ("R.S. & Amici Cost Application," Dkt. No. 1945; "Zerby Cost Application," Dkt. No. 204.) As described in this Order, the Court GRANTS in part each fee motion, GRANTS the R.S. & Amici Cost Application, and GRANTS in part the Zerby Cost Application.

**BACKGROUND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

Douglas Zerby was shot and killed without warning by two police officers who mistook the water hose nozzle he was handling for a gun. After the shooting, officers discovered the object was not a gun, but rather a pistol-grip water hose nozzle, not attached to a hose.

R.S., Amici, and Zerby sued. R.S. and Amici hired one law firm, and Zerby hired another. Each of those law firms associated with another law firm. The over 2 years of litigation that followed included various discovery disputes, a motion for summary judgment, and a jury trial. Plaintiffs won. The jury awarded damages of $1 million to Amici, $2 million to Zerby, and $3.5 million to R.S.

**PRELIMINARY MATTERS**

Before handling the substance of this Motion, the Court must address "Plaintiff Mark Zerby's Objections and Motion to Strike All or Portions of the Declaration of Robert Bruning in Support of Defendants' Opposition to Motion for Attorneys' Fees (Doc #210)." ("Objections," Dkt. No. 216.) Zerby objects that Bruning's opinions are legal conclusions, are inadmissible under Federal Rules of Evidence 402 and 403, lack foundation, and are derived from a computer software program that doesn't meet the *Daubert* standard.

Zerby's main objection appears to be that Bruning is not qualified as an expert under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may offer opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The burden of establishing the admissibility of expert testimony falls on the party seeking its admission. *See DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

Zerby argues that Bruning does not have the knowledge, skill, experience, training, or education necessary to be qualified as an expert in this case because Bruning does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

have experience litigating police misconduct, excessive force, or wrongful death cases. (Objection at 2-3, 5.) But even if that is true, Bruning is still qualified as an expert here. Bruning has been an attorney for decades in California and litigated many kinds of cases. (Bruning Decl. 1 ¶ 3.) For twenty years, he has represented hundreds of clients in fee review and analysis and provided expert opinion in these areas. (*Id.*) The Court isn't persuaded that more specifically tailored experience is required to opine on the issues here.

In fact, Bruning opines very little based on his experience. Instead, he opines based on the knowledge he obtained through legal research concerning fee awards granted by central district judges, and his scrutiny of the declarations supporting the fee motions. Bruning has enough knowledge, skill, experience, training, or education to opine based on these sources under Rule 702. To the extent Bruning offers opinions on matters where a civil rights attorney would be more knowledgeable, that goes to weight, not admissibility here. Thus objections to Bruning's qualifications as an expert are OVERRULED.

To the extent Zerby objects that Bruning's opinions lack foundation because they rely on inapplicable caselaw, those objections are better taken up as argument. The Court considers the arguments made in Plaintiffs' replies concerning whether cases Defendants cite from non civil rights contingency contexts, including *Kochenderfer* and *Welch*, apply. (*See, e.g.*, Zerby Reply at 10; R.S. & Amici Reply, Dkt. No. 214, at 7.)

As to the computer software program, Bruning's opinions do not appear to be based on that program. The computer program may have helped Bruning target specific billing entries, but his opinions in this area appear to be based on the attorneys' time entries, not on the computer program's output. This objection is OVERRULED.

Any remaining objections are OVERRULED and the motion to strike is DENIED.

**LEGAL STANDARD**

Plaintiffs seek attorney fees under 42 U.S.C. Section 1988. That statute provides that in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

cases brought under 42 U.S.C. Section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

Courts follow a two-step analysis to determine what fee award is reasonable under Section 1988. First, courts calculate a starting point—the "lodestar"—by multiplying the hours reasonably spent on the case by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Second, courts decide whether to award more or less than the lodestar based on what are called the *Kerr* factors. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976); *Fischer*, 214 F.3d at 1119.

Determining a reasonable hourly rate and reasonable hours spent can involve considerable number crunching. Indeed, sometimes "[t]he net result of fee-setting jurisprudence . . . is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2007) (O'Connor, J., sitting by designation, joining the opinion) (citation omitted).

But "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011). Thus "trial courts need not, and indeed should not, become green-eyeshade accountants." *Id.* Rather, they "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

## ANALYSIS

There is no dispute that Plaintiffs were the prevailing party in this case. The only issue is how much their attorneys should receive in fees. Thus the Court first discusses the lodestar calculation and then considers the additional *Kerr* factors.

**1.     LODESTAR**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

The parties dispute both the reasonable hourly rate of Plaintiffs' attorneys and the reasonable hours spent. But before discussing either, it is helpful to remember why attorney fees are awarded under Section 1988 in the first place.

"The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted). As this Court has previously found, civil rights attorneys serve a vitally important public interest. By "present[ing] cases of people harmed by excessive governmental power," they help the judicial branch protect the fundamental balances of power struck by the United States Constitution. *McCown v. City of Fontana*, 711 F. Supp. 2d 1067, 1071 (C.D. Cal. 2010) *aff'd*, 464 F. App'x 577 (9th Cir. 2011).

Thus attorney fees under this Section serve, among other functions, to (1) incentivize attorneys to file potentially valid claims against the government, thus ensuring those who violate civil rights do not go unpunished; (2) give access to justice to those who may otherwise not get it for lack of resources; and (3) reward attorneys who take the risks associated with filing cases where they may not get paid. But Courts "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (internal citations omitted).

It seems that the incentive in these types of cases leads directly to windfalls. Attorneys represent to courts that their rate is high, get someone else (generally an attorney in their field who may also seek a similar rate in the future) to endorse that rate, and hope the court will grant something near it. Since they don't actually have to charge the rate to anyone, it doesn't matter if the rate is so high that no one would pay it. And then, once a court awards a high rate, the attorney (and the attorney in the field who endorsed the rate) can use that as justification for requesting an even higher rate in the next case. *See Kochenderfer v. Reliance Standard Life Ins. Co.*, 06-CV-620 JLS (NLS), 2010 WL 1912867 (S.D. Cal. Apr. 21, 2010) (describing declarations supporting the attorney fee motions as "self-serving and self-perpetuating").

Take attorney Beck, for example. Around September 2011, Beck told the Court that his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

hourly rate was $400. This Court found that Beck had not sufficiently justified the $400 rate, and found that a $275 hourly rate was appropriate. Now, barely more than 3 years later, and for some time that directly overlaps with the time involved in the September 2011 case, Beck's claimed hourly rate has nearly *doubled* to $750. What explains this rise? Beck is more experienced now, but not much more so, especially at the start of this case. And Beck was the second attorney in both cases, so that doesn't help. It shouldn't take $350 more dollars an hour, or $475 more than this Court previously found reasonable, to attract qualified counsel to this kind of case only three years later.

The Court must strive to be true to the original purposes of Section 1988 fees while it conducts the lodestar analysis.

### 1.1    Reasonable Hourly Rate

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). In other contingency contexts, the Ninth Circuit has said that reasonable hourly rates may be "established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (ERISA) (citing *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992) *opinion vacated in part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) (employment discrimination).

The Court finds that Plaintiffs have not carried their burden to justify many claimed hourly rates here for reasons including the following: (1) the evidence concerning the average rate of Los Angeles attorneys is not very helpful; (2) the declarations supporting the claimed rates are also not very helpful; and (3) some claimed rates do not reflect prevailing rates for the type of work attorneys actually performed on this case.

### 1.1.1    *Plaintiffs' Evidence Concerning Average Los Angeles Rates*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

Plaintiffs' counsel point to surveys and news reports that say the average hourly rate of an attorney in the Los Angeles area is $800. (*See, e.g.*, Galipo Decl., Dkt. No. 194-1, Exhibit B.) This, they say, justifies an award in that range for their lead attorneys.

But this information, even if true, is not very helpful to a Court charged with "compensat[ing] counsel at the prevailing rate in the community *for similar work*; no more, no less." *Moreno*, 534 F.3d at 1111 (emphasis added). The rates in the cited materials include enormous, worldwide law firms with very wealthy clients, that litigate complex issues with hundreds of millions at stake. These firms generally don't do civil rights cases. And they certainly don't generally do contingency cases, where though there is great risk, there may also be great reward. Thus the rates charged by these firms don't necessarily reflect the prevailing rate in the community for similar work under *Moreno*. *See DuBose v. Cnty. of Los Angeles*, CV 09-7832 CAS AJW, 2012 WL 2135293, at *3n.8 (C.D. Cal. June 11, 2012) (noting that courts should not necessarily apply the same rates to attorneys seeking fees for civil rights claims as attorneys seeking fees for other claims).

Similarly, Fattahi justifies his claimed billing rate of $425 per hour in part by telling the Court that he billed $365 per hour when he worked at Quinn Emmanuel. (Decl. Of John Fattahi, Dkt. No. 194-4, ¶ 4.) But Quinn Emmanuel and Plaintiffs' attorneys' firms do not do similar work. Fattahi's billing rate at Quinn Emmanuel does not reflect the prevailing rate in Los Angeles for civil rights work.

Thus this information is not very helpful in determining reasonable rates.

### 1.1.2 *Declarations Supporting the Claimed Rates*

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). But declarations from other attorneys "do not conclusively establish the prevailing market

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

The declarations from attorneys supporting the rates requested do not conclusively establish the appropriate rates here because, as stated, they are "self-serving and self-perpetuating." *Kochenderfer*, 2010 WL 1912867. They come from people who state they know the attorney, say wonderful things about the attorney, and then say the attorney is worth what the attorney is asking for. (*See, e.g.*, Decl. Of Paul L. Hoffman, Dkt. Nos. 194-6; Decl. Of Danilo Becerra, Dkt. No. 194-9; Decl. Of John Burton, Dkt. No. 194-10 (all supporting Galipo's application).) These declarations help the Court somewhat, but they are not the most helpful evidence before it.

And they are even less helpful when they come from co-counsel in the same case. (*See, e.g.*, Decl. of Dale K. Galipo, Dkt. No. 202 (supporting Beck's application); Decl. of Thomas E. Beck., Dkt. No. 194-8 (supporting Galipo's application); Decl. of Robert M. Bruning in Support of Defendants' Opposition to Zerby Fee Motion ("Bruning Decl 1," Dkt. No. 210) ¶ 17; Decl. of Robert M. Bruning in Support of Defendants' Opposition to R.S. & Amici Fee Motion ("Bruning Decl. 2," Dkt. No. 211) ¶ 19.)

### 1.1.3 *Actual Work Performed*

In deciding reasonable hourly rates, the Court also considers the type of work attorneys actually performed in this case. For example, although Dizon is an attorney, much of the work she did on this case could have been performed by a paralegal. She spent a lot of time "centraliz[ing] communications and coordinat[ing] all plaintiffs' counsel," (Dizon Decl., Dkt. No. 199-1 ¶ 11) and organizing trial documents (*id.* ¶ 17).

Plaintiffs argue Dizon's rate should not be reduced, citing *Moreno*. They argue that having Dizon, an attorney, do this work "saved time because her involvement allowed her direct knowledge of all of the facts relating to the case and did not require Mr. Mardirossian or Mr. Beck to spend significant time to supervise, review, re-write or re-do her work." (Zerby Reply, Dkt. No. 215, at 4.) But the reasoning in *Moreno* is not directly on point here. The *Moreno* court reasoned that having the senior attorney do document review was not a basis for decreasing fees because it saved both a junior associate's time

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

reviewing documents and also a partner's time supervising. *Moreno*, 534 F.3d at 1115.

But document review is very different from centralizing communications and organizing trial documents. Time may be saved by having a senior partner do document review. But there is no time saved by an experienced attorney coordinating schedules or organizing documents. Indeed, it seems like Zerby came around to this position in the end. *See* Zerby Reply at 8 (stating that Zerby "does not object to a reduction of [Dizon's] requested hourly rate for" the hours spent on tasks that could have been delegated to a paralegal).

Thus in setting Dizon's hourly rate, the Court considers factors including the degree of legal work she did, the Court's observations during trial, and the Court's overall sense of the case.

### 1.1.4 *Summary and Conclusion*

The Court finds that Plaintiffs' counsel have not sufficiently justified many claimed hourly rates, and that the hourly rates in the following chart are reasonable. These conclusions are based on the previous discussion, the declarations submitted supporting and opposing each hourly rate, the skill counsel showed in prosecuting this case, the fact that the fee was contingent, windfall considerations, the evidence both parties submitted of the hourly rates awarded by other courts in similar cases, the evidence counsel submitted of rates they have been awarded in previous cases, and other considerations.

| **Attorney** | **Claimed Hourly Rate** | **Reasonable Hourly Rate** |
|---|---|---|
| Dale Galipo | $800 | $800 |
| Kaveh Navab | $300 | $275 |
| Adrienne Quarry | $350 | $300 |
| John C. Fattahi | $425 | $350 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

| | | |
|---|---|---|
| Brian Claypool | $500 | $300 |
| Garo Mardirossian | $800 (though written as $850 in some places) | $550 |
| Thomas Beck | $750 | $300 |
| Rowena Dizon | $450 | $275 |

### 1.2     Reasonable Hours Spent

The Court next considers the number of hours spent on this case. To calculate how many hours to compensate, courts consider whether, in light of the circumstances, the time could reasonably have been billed to a private client. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). But "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1111.

The Court finds the number of hours spent on this litigation should be reduced for hours spent on (1) duplicated efforts; (2) media contact; and for (3) vague entries, among other things.

#### 1.2.1   *Duplication*

Many attorneys worked on this case. The Court recognizes each plaintiff's right to retain counsel, but does find that some work was duplicated by these two sets of attorneys. For example, they filed "frequently overlapping" yet separate oppositions to Defendants' motion for summary judgment (Dkt. Nos. 61, 62), which the Court ordered them to consolidate (Dkt. No. 70).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

Hours spent attending depositions, hearings, and trial should also be decreased under the circumstances here. For example, Claypool billed almost 130 hours just for attending trial in this case. (Claypool Time Entries, Dkt. No. 194-5; *see* Bruning Decl. 2 ¶ 55.) But he didn't examine any witnesses or otherwise speak at trial. He also billed for attending depositions, mediations, and hearings, where he did not participate. (*See id.*) The Court is mindful that at times it is necessary and prudent to take more than one attorney to these events. But awarding full fees for each person who attends is not always appropriate. Even Claypool seems to think that the important role he played in this case was the "investigation . . . in terms of locating witnesses and analyzing crucial evidence," not on later matters like motions or trial. (Decl. Of Brian Claypool, Dkt. No. 194-4, ¶ 11; *see also* Claypool Time Entries, Dkt. No. 194-5, between December 2010 and April 2012.) The Court finds that it is appropriate here to decrease the hours Claypool billed for attending matters related to this case. This says nothing of the questionable accuracy of Claypool's entries. (*See* Bruning Decl. 2 ¶ 44).

The Court similarly considers the hours billed for other attorneys who attended trial matters but did not participate substantially, understanding also that those attorneys may have had more to offer than direct participation in trial. (*See, e.g.*, Bruning Decl. 1 ¶ 45 (concerning Beck); Zerby Reply at 7 (stating that Beck sat at counsel table because of his experience with section 1983 jury trials).)

Along these lines, hours should be reduced for the extra communication required by the number of attorneys staffing this case. (*See* Bruning Decl. 1 ¶ 49.) Dizon alone billed 176 hours related to centralizing communication. (Dizon Decl. ¶ 11 and related time entries.) And on top of Dizon's centralization efforts, all of the attorneys on this case billed many hours communicating with the other attorneys. The Court finds that under the circumstances here, it is not appropriate to award fees for all of the communication hours billed.

The Court finds that a general 10% haircut under *Moreno* is warranted here. *See Moreno*, 534 F.3d at 1112. That haircut addresses the Court's general duplication concerns described here. The Court also finds that a modest additional decrease in hours for attorneys including Dizon, Beck, and Claypool for the reasons described is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

### 1.2.2  *Media Contact*

This case was heavily publicized. But media contact is an activity "that attorneys generally do at their own expense." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995). The Court decreases reasonable hours spent accordingly. (*See* Claypool's Time Entries, Dkt. No. 194-5, at 12/15/10; 12/23/10; Mardirossian's Time Entries, Dkt. No. 197-1, at 3/14/11; 8/4/11; 11/3/11; 11/4/11; 1/15/12.)

Relatedly, hours spent related to the preparation of a YouTube video concerning this case are not appropriate under the circumstances here. (*See* Mardirossian's Time Entries at 1/15/12; 1/16/12; 6/22/12; 12/21/12; 1/5/12.) This video created problems during the case, and is the type of self promotion fit for performing at the attorney's own expense.

### 1.2.3  *Vague Entries*

When time entries are vague, it is difficult and sometimes impossible to tell whether the time was reasonably spent. The Court decreases hours spent accordingly. (*See* Bruning Decl. 1 ¶ 55; Exh. O, Dkt. No. 210-15 (citing entries of "legal research"); Bruning Decl. 2 ¶ 53; Exh. N, Dkt. No. 211-14 (citing entries including "review initial documents").)

### 1.2.4  *Summary and Conclusion*

Based on reasons including those just described, the Court finds that Plaintiffs' counsel have not sufficiently justified the claimed hours spent. The Court finds that the hours spent in the following chart are reasonable.

| Attorney | Claimed Hours Spent | Appropriate Deductions | Reasonable Hours Spent |
|---|---|---|---|
| Dale Galipo | 748.4 | 75 | 673.4 |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

| | | | |
|---|---|---|---|
| Kaveh Navab | 136.65 | 25 | 111.65 |
| Adrienne Quarry | 92.4 | 13 | 79.4 |
| John C. Fattahi | 3.5 | 0.7 | 2.5 |
| Brian Claypool | 558.8 | 175 | 383.8 |
| Garo Mardirossian | 591.45 | 115 | 476.45 |
| Thomas Beck | 301.05 | 55 | 246.05 |
| Rowena Dizon | 1326.05 | 260 | 1066.05 |

Thus, the lodestar calculation is as follows:

| Attorney | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Dale Galipo | $800 | 673.4 | $538,720 |
| Kaveh Navab | $275 | 111.65 | $30,703.75 |
| Adrienne Quarry | $300 | 79.4 | $23,820 |
| John C. Fattahi | $350 | 2.5 | $875 |
| Brian Claypool | $300 | 383.8 | $105,545 |
| Garo Mardirossian | $550 | 476.45 | $262,048 |
| Thomas Beck | $300 | 246.05 | $73,815 |
| Rowena Dizon | $275 | 1066.05 | $293,164 |
| **Total Lodestar** | | | **$1,338,285** |

But, of course, the lodestar is only the first step in the attorney fee determination. The Court now turns to the additional factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

## 2. DEPARTURE FROM THE LODESTAR

As stated, the Court must consider the *Kerr* factors in deciding whether to depart from the lodestar. The *Kerr* factors not already included in the lodestar calculation are: (1) time limitations imposed by the client or the circumstances, (2) the amount involved and the results obtained, (3) the experience, reputation, and ability of the attorneys, (4) the "undesirability" of the case, (5) the nature and length of the professional relationship with the client, and (6) awards in similar cases. *Kerr*, 526 F.2d 67 (listing the twelve factors); *see also Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (finding that five of the factors have been subsumed in the lodestar calculation); *see also Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) (stating that a sixth factor is irrelevant in evaluating attorney's fees).

Concerning factor (2), courts assess whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. The Ninth Circuit has held that "attorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008).

In light of this, the Court wrote the following in its April 18, 2013 Order:

> Considering the factors to award fees under 28 U.S.C. § 1988, the Court wonders whether a principal theory presented by the Plaintiffs is that the officers, after an inadvertent gunshot, lied about being fearful of Douglas Zerby possessing a gun, as perhaps reflected in the following statement from closing argument:
>
> > [Y]ou've got to think for yourselves, for a moment, could this be as the Plaintiffs had suggested that this [was] an inadvertent shot, a contagious fired [shot] that killed an innocent man? And then the officers sort of said, we'd better figure out what happened here. . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

> We can't say this was accidental or inadvertent. That looked like a gun, didn't it fellas? I think it is. I thought it was a gun. As a matter of fact, he was pointing that gun, wasn't he? Yeah, yeah, he was pointing. . . . So is it likely, is it possible, that these officers realized their mistake, their dire mistake, and got back there and thought about how to best justify their actions?
>
> Rough Trial Transcript of April 2, 2013.

(Order Re Post-Trial Motions, Dkt. No. 164, at 1-2.)

Counsel did not address this in their papers, so confusion remains. If this really reflected the public benefit Plaintiffs sought to advance, they didn't succeed. The Court finds it appropriate to not award fees for the 16 hours Mardirossian billed for "[t]rial prep for closing," and for the roughly 2 hours of closing argument itself. Thus the Court decreases the fees awarded to Mardirossian by 18 hours at $550 per hour, or $9,900.

The Court finds that none of the other *Kerr* factors warrant departure from the lodestar here.  Further, the Court is confident, under all the circumstances that the Court became very familiar with over the course of this case and through trial, that Plaintiffs' counsel's final compensation for the work done on this case will incentivize plaintiffs attorneys to take Section 1983 cases in the future.

3.      COSTS

Now to costs. R.S. and Amici request $8,803.51 in costs. (R.S. & Amici Cost Application.)  Defendants do not object. The costs requested appear to be reasonable. The Court GRANTS R.S. and Amici's Cost Application.

Zerby requests $131,198.14 in costs. (Zerby Cost Application.) Defendants object to 3 entries: $5,625 for an animation, $82,000 for creating a scale model diorama, and $18,000 for digital trial technicians. (Defendants' Objection to Zerby Cost Application, Dkt. No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

209.)

As the Court stated at the hearing, while some demonstratives in this trial were flashy, at times they did not seem to be employed to their full effectiveness. The Court thus finds that awarding $4,000 for the animation is appropriate. As to the model, counsel for Defendants said at the hearing that he did not object to the Court awarding costs for the scale model.  The Court awards the full costs for the model.

Thus the Court GRANTS in part Zerby's request for costs in the amount of $129,573.14.

## **DISPOSITION**

The Court GRANTS in part R.S. and Amici's Fee Motion and Zerby's Fee Motion, and awards $1,328,385. The Court GRANTS in full R.S. and Amici's Cost Application, which requests $8,803.51 in costs.  The Court GRANTS in part Zerby's Fee Request, and awards $129,573.14 in costs.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |